IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

PETER C. ALEXANDER,          :
                             :
        Plaintiff,           :
                             :
    v.                       :     CIVIL ACTION NO.
                             :     2:13-CV-00067-RWS
BANK OF AMERICA, N.A., *et*   :
*al.*,                       :
                             :
        Defendants.          :

## ORDER

This case comes before the Court on Defendant Rubin Lublin's Motion to Dismiss [7] and Defendants Bank of America, N.A., Mortgage Electronic Registration Systems, Inc., and Bank of New York Mellon's Motion to Dismiss [11]. After reviewing the record, the Court enters the following Order.

## Background

On April 18, 2007, Plaintiff Peter C. Alexander obtained a loan in the amount of $1,600,000 secured by real property located at 5970 Providence Lane, Cumming, Georgia 30040. (Compl., Dkt. [1-1] ¶¶ 2, 5.) Plaintiff executed a Security Deed in favor of Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender with Mortgage Electronic Registration Systems,

Inc. ("MERS") as nominee.  (Id. ¶ 5.)  On October 23, 2010, MERS assigned all of its interest in the Security Deed to the Bank of New York Mellon as Trustee for the Benefit of CWALT, Inc., Alternative Loan Trust 2007-12T1, Mortgage Pass-Through Certificate Series 2007-12T1 ("BONY").  (Id. ¶ 7.)  Apparently, MERS again executed an assignment in favor of BONY on October 11, 2011. (Id. ¶ 8.)  Plaintiff alleges that a "securitization audit" identified a Pooling and Servicing Agreement ("PSA") "which has certain requirements for procedures for acquiring, assigning, and foreclosing on a Note" that is part of the above trust.  (Id. ¶ 26.)

In December 2011, Plaintiff sent a Qualified Written Request ("QWR") pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., to Bank of America, N.A. ("BANA"), the servicer of Plaintiff's loan.  In his letter, Plaintiff made numerous requests for information and documents related to his loan.  (See Pl.'s QWR, Dkt. [1-1] at 53-71.)  BANA responded to some of the questions in his QWR but declined to answer many others on the grounds that they were overly broad and outside the scope of what RESPA required.  (See BANA Letter, Dkt. [1-1] at 72-76.)  On February 18, 2013, after Plaintiff apparently went into default on his mortgage, Defendant

2

Rubin Lublin, LLC sent Plaintiff a notice of foreclosure on behalf of BONY setting the foreclosure sale date for April 2, 2013.  (Notice of Foreclosure, Dkt. [1-1] at 79.)

Plaintiff brought this action in the Superior Court of Forsyth County on March 22, 2013.  (Compl., Dkt. [1-1].)  Defendant Rubin Lublin then removed to federal court on March 27.  Plaintiff asserts numerous state and federal claims against Defendants, nearly all of which are premised on his allegations that the assignment from MERS to BONY was invalid.  According to Plaintiff, MERS assigned the Security Deed to BONY after the closing of the trust pool in 2007 in violation of the terms of the PSA, and thus BONY lacks standing to foreclose on his property.  (Id. ¶ 27-29.)  Furthermore, he alleges that Rubin Lublin lacks authority to act on behalf of BONY.  (Id. ¶ 30.)

Specifically, Plaintiff accuses Rubin Lublin of violations of the Fair Debt Collection Practices Act ("FDCPA") (Count II), breach of contract (Count III), negligence (Count IV), negligent misrepresentation (Count V), and wrongful attempted foreclosure (Count VI).  Plaintiff brings these same claims against Defendants BANA, MERS, and BONY, in addition to claims under the Truth in Lending Act ("TILA") (Count I) and the Real Estate Settlement Procedures Act

3

("RESPA") (Count VIII).  He also alleges that the latter Defendants are liable for Defendant Rubin Lublin's conduct under the theory of *respondeat superior* (Count XI).  Finally, Plaintiff petitions to quiet title in his favor (Count XII) in addition to requesting a declaratory judgment, punitive damages, and attorney's fees.  Defendant Rubin Lublin filed a Motion to Dismiss [7] on April 22, 2013, arguing that Plaintiff has failed to state any claims against it.  That same day, Defendants BANA, MERS, and BONY also filed a Motion to Dismiss [11] for failure to state a claim.

## Discussion

## I.     Motion to Dismiss Legal Standard

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint."  Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff.  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal citations omitted).  However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

4

a cause of action will not do.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id.

The United States Supreme Court has dispensed with the rule that a

complaint may only be dismissed under Rule 12(b)(6) when " 'it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief.' " Twombly, 550 U.S. at 561 (quoting

Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has

replaced that rule with the "plausibility standard," which requires that factual

allegations "raise the right to relief above the speculative level." Id. at 556.

The plausibility standard "does not[, however,] impose a probability

requirement at the pleading stage; it simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence [supporting the

claim]." Id.

"The district court generally must convert a motion to dismiss into a

motion for summary judgment if it considers materials outside the complaint."

D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also Fed. R.

Civ. P. 12(d).  However, documents attached to a complaint are considered part

5

of the complaint.  Fed. R. Civ. P. 10(c).  Documents "need not be physically

attached to a pleading to be incorporated by reference into it; if the document's

contents are alleged in a complaint and no party questions those contents, [the

court] may consider such a document," provided it is central to the plaintiff's

claim.  D.L. Day, 400 F.3d at 1276.  At the motion to dismiss phase, the Court

may also consider "a document attached to a motion to dismiss . . . if the

attached document is (1) central to the plaintiff's claim and (2) undisputed."  Id.

(citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).  "'Undisputed'

means that the authenticity of the document is not challenged."  Id.  The Court

next considers each motion to dismiss and the respective claims against each

Defendant.

**II.**     **Defendant Rubin Lublin's Motion to Dismiss [7]**

        A.     Violation of the Fair Debt Collection Practices Act (Count II)

        First, in Count II of the Complaint, Plaintiff alleges that Rubin Lublin

violated 15 U.S.C. § 1692f(6)(A) of the FDCPA, which prohibits "[t]aking or

threatening to take any nonjudicial action to effect dispossession or disablement

of property if there is no present right to possession of the property claimed as

collateral through an enforceable security interest."  According to Plaintiff,

6

Defendants do not have a right to possession because the Security Deed was not assigned to BONY in compliance with the PSA and is thus invalid.[1]  (Compl., Dkt. [1-1] ¶¶ 45-49.)  Rubin Lublin argues that Plaintiff has no standing to dispute the validity of the assignment of the Security Deed, that Defendants were not debt collectors, and that they did not engage in debt collection activity subject to the FDCPA.

While it is true that enforcement of a security interest through foreclosure is not debt collection for the purposes of most provisions of the FDCPA, mortgage servicers are considered debt collectors for purposes of § 1692f(6). Warren v. Countrywide Home Loans, Inc., 342 F. App'x 458, 460 (11th Cir. 2009).  Yet even assuming that Rubin Lublin is a debt collector, Plaintiff fails to state a claim because 1) Plaintiff does not have standing to challenge the assignment, and 2) Defendants had a right to possession of the property.  First,

---

[1]Plaintiff also alleges in his Complaint that Defendants never produced a copy of the Note.  (Dkt. [1-1] ¶ 45.)  In his Response to Rubin Lublin's Motion to Dismiss, however, Plaintiff acknowledges "that holding title to the Security Deed is all that Georgia law requires at the time of foreclosure."  (Dkt. [19] at 9.)  Indeed, the Georgia Supreme Court settled this question in You v. JP Morgan Chase Bank, N.A. when it held that the holder of a security deed "is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note."  743 S.E.2d 428, 433 (Ga. 2013).

7

Plaintiff was not a party to the PSA and thus "do[es] not have standing to challenge any purported breach of the rights and obligations of it." Edward v. Bank of America, N.A., No. 1:11-CV-2465-RWS-LTW, 2012 WL 4327073, at *6 (N.D. Ga. Aug. 2, 2012).  Furthermore, Plaintiff has no standing to contest the assignment's validity because he is not a party to that contract, either. See Montgomery v. Bank of Am., 740 S.E.2d 434, 438 (Ga. Ct. App. 2013) (holding that a non-party to an assignment has no standing to challenge the validity of the assignment even if the assignment was somehow flawed).

Second, even if Plaintiff did have standing to challenge the assignment, "[w]here there is an enforceable security interest shown by public records, dismissal of a § 1692f(6) claim is appropriate." Moore v. McCalla Raymer, LLC, 916 F. Supp. 2d 1332, 1347 (N.D. Ga. 2013) (internal quotation marks omitted).  Plaintiff has not pointed to "any legal authority from Georgia showing that execution of a Security Deed in favor of MERS and MERS' recorded assignment of its rights in the Security Deed to BONY are rendered invalid merely because of some anomaly in compliance with a separate private agreement." Edward, 2012 WL 4327073, at *6.  The Court finds no basis to conclude "that a recorded assignment becomes invalid merely because it was

8

not made in compliance with a PSA or any other private agreement when no party to or beneficiary of the agreement has challenged the assignment." <u>Id.</u> (collecting cases).  Here, the Security Deed clearly contemplates assignment, as it conveys to MERS and its "successors and assigns" the subject property with power of sale.  (Dkt. [1-1] at 41.)  And because there was a valid recorded assignment from MERS to BONY executed on October 28, 2012, BONY had a right to possession by the power of sale terms in the Security Deed.  Rubin Lublin thus did not violate the FDCPA when it represented that BONY was entitled to foreclose on Plaintiff's property.

> B.    <u>Breach of Contract (Count III) and Violation of the Real Estate Settlement Procedures Act (Count VIII)</u>

Plaintiff does not specify against which Defendants he asserts his breach of contract and RESPA claims, but Plaintiff clarified in his Response to Rubin Lublin's Motion to Dismiss that he does not raise either claim against Rubin Lublin.  (Dkt. [19] at 10 & n.2.)  Consequently, these claims are dismissed as to Rubin Lublin.

AO 72A
(Rev.8/82)

C.     Negligence (IV)

Plaintiff alleges that "Defendants have a duty imposed by contract and by statute as bankers, lenders, and as debt collectors."  (Compl., Dkt. [1-1] ¶ 57.) He further alleges that Defendants were negligent by "(1) failing to provide answers to the QWR, (2) failing to provide proof of assignments, (3) failing to provide proof of title, right, and standing, prior to attempting to foreclose on the Plaintiff, and (4) violating the fair debt collections act as adopted by Georgia." (Id. ¶ 58.)  Under Georgia law, "[t]he essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." Seymour Elec. & Air Conditioning Serv., Inc. v. Statom, 710 S.E.2d 874, 877 (Ga. Ct. App. 2011).

Plaintiff, however, has not shown that Rubin Lublin owed him any duty. Rubin Lublin acted as attorney and agent for BONY, and "typically a law firm owes no duty to its clients' adversary."  Vieira v. Citigroup, Inc., No. 1:12-CV-1636-TWT, 2012 WL 6194350, at *5 (N.D.Ga. Dec. 12, 2012) (citing McKenna Long & Aldridge, LLP v. Keller, 598 S.E.2d 892, 894-95 (Ga. Ct. App. 2004)).  Rubin Lublin and Plaintiff have no contractual relationship that

10

imposed a particular duty on Rubin Lublin, and in any event "[a] defendant's mere negligent performance of a contractual duty does not create a tort cause of action." Fielbon Dev. Co. v. Colony Bank of Houston Cnty., 660 S.E.2d 801, 808 (Ga. Ct. App. 2008) (quoting Wallace v. State Farm Fire & Cas. Co., 539 S.E.2d 509, 512 (Ga. Ct. App. 2000)). Instead, Plaintiff explains that Defendants assumed "the duty to avoid causing harm to others" because "in their capacities as bankers, lenders and debt collectors they are uniquely positioned to wreak havoc on an innocent borrower's life simply by failing to exercise ordinary care in the conduct of their affairs." (Pl.'s Resp. to Rubin Lublin's Mot. to Dismiss, Dkt. [19] at 10.) But Plaintiff does not cite any statutes or cases imposing such duties on Rubin Lublin, and even if these duties existed, Plaintiff has not shown that Rubin Lublin breached them by sending him a valid foreclosure notice. See McCarter v. Bankers Trust Co., 543 S.E.2d 755, 758 (Ga. Ct. App. 2000) (concluding that a law firm breached no tort duties because it complied with Georgia's foreclosure statute).

    D.    Negligent Misrepresentation (Count V)

    Next, Plaintiff alleges that Defendants

11

breached their duties by (a) representing and claiming title, right and standing to provide notice of foreclosure, when they did not have it, (b) representing they had the ability and authority to collect on a debt that they do not own any right to collect on behalf of, (c) representing and claiming to have authority on behalf of the wrong Trustees to foreclose, and (e) filing assignments that were invalid, wrong, or after the closing of the Pooling and Servicing Agreements.

(Compl., Dkt. [1-1] ¶ 63.)  He further states that he reasonably relied on Defendants' assertions by making payments to BANA and pursuing a loan modification, and that he suffered damages as a result.  (Id. ¶¶ 64-65.)

"The essential elements of negligent misrepresentation are '(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.'" Marquis Towers, Inc. v. Highland Grp., 593 S.E.2d 903, 906 (Ga. Ct. App. 2004) (quoting Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 479 S.E.2d 727, 729 (Ga. 1997)).  Here, Plaintiff's allegations of false representation rest on his argument that the assignment of the Security Deed from MERS to BONY was invalid because Defendants failed to comply with the PSA.  As stated above, the Court rejects this unsupported legal theory, and

12

thus Plaintiff's allegations fail to show that the representations regarding

Defendants' title and standing to foreclose were false.  Moreover, Plaintiff does

not show how any damages he sustained are the proximate cause of these

alleged misrepresentations because "[t]he assignment does not affect whether

the power of sale contained in the security deed can be exercised; it merely

affects who can exercise it."  <u>Davidson v. Mortgage Electronic Registration</u>

<u>Sys., Inc.</u>, No. 3:12-CV-47-TCB, 2012 WL 6971002, at *3 (N.D. Ga. May 7,

2012).  Because Plaintiff was in default when Defendants commenced

foreclosure proceedings on his home, as discussed below, Plaintiff's property

would have been subject to foreclosure even if Rubin Lublin's representations

were false.  As such, Plaintiff fails to state a claim for negligent

misrepresentation.

     E.    <u>Wrongful Attempted Foreclosure (Count VI)</u>

     Plaintiff asserts that Rubin Lublin published a foreclosure advertisement

containing false information in the Forsyth County Legal Organ in March 2013.

(Compl., Dkt. [1-1] ¶ 67.)  To state a claim for attempted wrongful foreclosure

in Georgia, a plaintiff must establish "a knowing and intentional publication of

untrue and derogatory information concerning the debtor's financial condition,

13

and that damages were sustained as a direct result of this publication." <u>Aetna Fin. Co. v. Culpepper</u>, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984).  Specifically, Plaintiff alleges that Defendants falsely published 1) that the Security Deed had been validly assigned to BONY, 2) "that Plaintiff was in default of an obligation to the Bank of New York," and 3) "that the underlying debt had been validly declared 'due and payable' by the Bank of New York."  (Compl., Dkt. [1-1] ¶ 70.)

The first and third statements are related to the validity of the assignment and are not misrepresentations for the reasons the Court has explained.  As for the statement that Plaintiff was in default, Plaintiff asserts only that he was not in default *as to BONY*.  Courts have rejected attempted wrongful foreclosure claims when "the plaintiff does not allege that he had *not* defaulted on his mortgage obligation" but "seems to be alleging only that the defendant was not the right entity to call him to task for that breach and therefore that *this* defendant should have no power to foreclose." <u>Ezuruike v. Bank of New York Mellon</u>, No. 1:11-CV-4030-JEC, 2012 WL 3989961, at *1 (N.D. Ga. Sept. 11, 2012) (emphasis in original).  That is all Plaintiff alleges here.  He fails to allege in his Complaint that he has either tendered the amount due on his loan

14

or that he was not behind on his loan payments at the time foreclosure proceedings commenced.  See Watkins v. Beneficial, HSBC Mortg., No. 1:10-CV-1999-TWT-RGV, 2010 WL 4318898, at *5 n.9 (N.D. Ga. Sept. 2, 2010) ("[T]o seek any relief regarding a pending or past foreclosure sale, plaintiff must tender the amount owed under the loan.")  Plaintiff's only substantive arguments dispute the validity of the assignment, not his default on the underlying obligation.  This claim thus fails because Plaintiff does not make any plausible allegations that Rubin Lublin published false information about his default.

### F.    Quiet Title (Count XII)

Finally, the Georgia Quiet Title Act provides specific rules of procedure with respect to quiet title actions.  See O.C.G.A. § 23-3-60 et seq.  Here, Plaintiff's Complaint is deficient as a matter of law because the petition was not verified as required by O.C.G.A. § 23-3-62(b) and did not include a plat of the survey of the land as required by O.C.G.A. § 23-3-62(c) .  See Joseph v. CitiMortgage, 1:11-CV-2768-TWT, 2011 WL 5156817, *2 (N.D. Ga. Oct. 27, 2011) (dismissing quiet title action for the plaintiff's failure to verify her complaint and to include a plat of the survey of the land as required under the

15

Georgia Quiet Title Act); <u>Simpson v. Countrywide Home Loans</u>, 1:10-CV-0224-CAM-ECS, 2010 WL 3190693, at *7-8 (N.D. Ga. Apr. 26, 2010) (dismissing quiet title action for failure to comply with the requirements of the Georgia Quiet Title Act).  Plaintiff did not comply with the requirements of the Georgia statute, and consequently his quiet title action is dismissed.

>      G.      Leave to Amend

Finally, Plaintiff requests leave to amend in the event that the Court finds that the Complaint fails to state a claim.  (Pl.'s Resp., Dkt. [19] at 11 n.3.) Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one days after service of the pleading, or, if the pleading requires a response, within twenty-one days after service of a responsive pleading or motion filed under Rule 12(b), (e), or (f).  Otherwise, under Rule 15(a)(2), the party must seek leave of court or the written consent of the opposing parties to amend.  Rule 15(a)(2) directs the Court, however, to "freely give leave when justice so requires."  Despite this instruction, however, leave to amend is "by no means automatic."  <u>Layfield v. Bill Heard Chevrolet Co.</u>, 607 F.2d 1097, 1099 (5th Cir. 1979).  The trial court has "extensive discretion" in deciding whether to grant leave to amend.

16

Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir.1999).  A trial court

may choose not to allow a party to amend "when the amendment would

prejudice the defendant, follows undue delays or is futile."  Id.  A claim is futile

if it cannot withstand a motion to dismiss.  Fla. Power & Light Co. v. Allis

Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir.1996); see Burger King Corp. v.

Weaver, 169 F.3d 1310, 1315 (11th Cir.1999) (futility is another way of saying

"inadequacy as a matter of law").  That is, leave to amend will be denied  "if a

proposed amendment fails to correct the deficiencies in the original complaint

or otherwise fails to state a claim."  Mizzaro v. Home Depot, Inc., 544 F.3d

1230, 1255 (11th Cir. 2008).

    While Plaintiff did not attach a proposed Amended Complaint to his

Response, "failing to do so is not a basis for denying leave to amend."  Id. at

1255 n.4.  It is still necessary, though, for the request to "set forth the substance

of the proposed amendment."  Long v. Satz, 181 F.3d 1275, 1279 (11th Cir.

1999).   In his Response, Plaintiff fails to identify the substance of any proposed

amendments despite stating that any defects "can be easily cured by

amendment."  (Dkt. [19] at 11 n.3.)  As such, the Court finds that amendment

would be futile because Plaintiff fails to correct the deficiencies of his

17

Complaint.  See Patel v. Ga. Dep't BHDD, 485 F. App'x 982, 983 (11th Cir.

2012) (affirming denial of leave to amend when the plaintiff's motion

"provided no reason for the district court to believe that he could offer sufficient

allegations to make a claim for relief plausible on its face").  Because Plaintiff

fails to state a claim and because amendment would be futile, Plaintiff is not

entitled to his requests for a declaratory judgment, punitive damages, and

attorney's fees, and thus Defendant Rubin Lublin, LLC's Motion to Dismiss [7]

is due to be **GRANTED**.

**III.    Defendants BANA, MERS, and BONY's Motion to Dismiss [11]**

As a preliminary matter, the Court **DENIES** any relief Plaintiff seeks

from the remaining Defendants based on Rubin Lublin's actions under a theory

of *respondeat superior*.  Assuming *respondeat superior* could even be a basis

for liability in this action, Plaintiff has failed to state any plausible claims

against Rubin Lublin.

A.    Violation of the Truth in Lending Act (Count I)

First, Plaintiff alleges that Defendants failed to notify him of the

assignment from MERS to BONY within thirty days in violation of 15 U.S.C. §

1641(g).  That provision states:

18

> [N]ot later than 30 days after the date on which a mortgage loan is
> sold or otherwise transferred or assigned to a third party, the
> creditor that is the new owner or assignee of the debt shall notify
> the borrower in writing of such transfer, including – (A) the
> identity, address, [and] telephone number of the new creditor; (B)
> the date of transfer; (C) how to reach an agent or party having
> authority to act on behalf of the new creditor; (D) the location of
> the place where transfer of ownership of the debt is recorded; and
> (E) any other relevant information regarding the new creditor.

15 U.S.C. § 1641(g).

Defendants argue that Plaintiff's TILA claim is time-barred because it was not brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The Court agrees. The most recent assignment from MERS to BONY was on October 11, 2011. Assuming Defendants were required to notify Plaintiff of the assignment, the statute of limitations period began running thirty days after assignment, on November 10, 2011. Plaintiff did not file suit until March 22, 2013, well over a year after the statute of limitations period passed.

While Plaintiff argues that the statute of limitations was tolled until he discovered the alleged violation, (Pl.'s Resp., Dkt. [20] at 3), the plain language of the statute requires TILA claims to be brought within one year of the alleged violation. Although equitable tolling is permitted under TILA, the Eleventh

Circuit has made clear that tolling is only appropriate "where the debtor has

been prevented from bringing suit due to inequitable circumstances." <u>Velardo</u>

<u>v. Fremont Investment & Loan</u>, 298 F. App'x 890, 892 (11th Cir. 2008) (citing

<u>Ellis v. GMAC</u>, 160 F.3d 703, 706 (11th Cir. 1998)).  Plaintiff has not alleged

any inequitable circumstances preventing him from filing suit within the one-

year limitations period.  Moreover, as the Eleventh Circuit has held,

"[n]ondisclosure is not a continuous [TILA] violation for purposes of the statute

of limitations." (citing <u>In re Smith</u>, 737 F.2d 1549, 1552 (11th Cir. 1984)).

Consequently, Plaintiff's TILA claim is time-barred.

      B.      <u>Violation of the Fair Debt Collection Practices Act (Count II)</u>

      For the reasons discussed in Part II.A, *supra*, Plaintiff's FDCPA claim

against the remaining Defendants fails as well.  Besides concluding that

Plaintiff does not have standing to contest the assignment to BONY, the Court

also rejected Plaintiff's arguments that the assignment was somehow flawed

because MERS and BONY allegedly did not comply with the PSA.

Furthermore, the Security Deed conveys to MERS and its "successors and

assigns" the subject property with power of sale, thus clearly permitting

assignment.  (Dkt. [1-1] at 41.)  This claim thus fails because "[w]here there is

an enforceable security interest shown by public records, dismissal of a §

1692f(6) claim is appropriate." <u>Moore</u>, 916 F. Supp. 2d at 1347 (internal

quotation marks omitted).

      C.      <u>Breach of Contract (Count III)</u>

Next, Plaintiff alleges breach of contract against the remaining

Defendants.  The requisite showing for a breach of contract claim "are the

breach and the resultant damages to the party who has the right to complain

about the contract being broken." <u>Budget Rent-A-Car of Atlanta, Inc. v. Webb</u>,

469 S.E.2d 712, 713 (Ga. Ct. App. 1996).  "Moreover, a plaintiff asserting a

breach of contract claim must allege a particular contract provision that the

defendants violated to survive a motion to dismiss." <u>Anderson v. Deutsche</u>

<u>Bank Nat. Trust Co.</u>, No. 1:11-CV-4091-TWT-ECS, 2012 WL 3756512, at *5

(N.D. Ga. Aug. 6, 2012) (citing <u>Am. Casual Dining, L.P. v. Moe's Sw. Grill,</u>

<u>LLC</u>, 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006)).

Here, Plaintiff has pointed to no particular provisions in the Note or

Security Deed that Defendants violated.  Instead, Plaintiff's Complaint asserts

that Defendants were in breach because they negligently assigned the Note and

Security Deed, failed to provide proof of assignment, and failed to prove their

standing to foreclose, among other allegations, all despite the absence of any

contractual provisions permitting Defendants to commit such alleged

wrongdoing.  (Compl., Dkt. [1-1] ¶ 52.)  Based on these allegations, Plaintiff's

breach of contract claim fails because he is unable to identify any contract

provision that Defendants breached.  And to the extent that Plaintiff attempts to

state a claim for breach of the implied covenant of good faith and fair dealing

based on Defendants' alleged wrongdoing, that claim fails absent a breach of an

express term of the contract.  Morrell v. Wellstar Health Sys., Inc., 633 S.E.2d

68, 72 (Ga. Ct. App. 2006) ("Although each contract . . . contain[s] an implied

covenant of good faith and fair dealing in the performance of the contract, there

is no independent cause of action for violation of the covenant apart from

breach of an express term of the contract.").

> D.     Negligence (Count IV)

As with Rubin Lublin, Plaintiff has not sufficiently alleged that the other

Defendants owed him any particular duties that could give rise to a tort claim.

He states that their status as bankers, lenders, and debt collectors imposes "the

duty to avoid causing harm to others" because "in their capacities as bankers,

lenders and debt collectors they are uniquely positioned to wreak havoc on an

innocent borrower's life simply by failing to exercise ordinary care in the conduct of their affairs."  (Pl.'s Resp., Dkt. [19] at 10.)  However, he has not cited any authority for this proposition.

Furthermore, any duties relating to the Security Deed arose from contract.  See Commercial Bank & Trust Co. v. Buford, 243 S.E.2d 637, 638 (Ga. Ct. App. 1978) ("[T]he only relationship between [borrower] and the bank was that which arose out of the note and security deed.").  Because "[a] defendant's mere negligent performance of a contractual duty does not create a tort cause of action," Plaintiff's negligence claim fails.  Fielbon Dev. Co., 660 S.E.2d at 808.

> E.      Negligent Misrepresentation (Count V), Attempted Wrongful
>         Foreclosure (Count VI), and Quiet Title (Count XII)

The claims of negligent misrepresentation and attempted wrongful foreclosure, as well as Plaintiff's petition to quiet title, are all due to be dismissed for the reasons stated in Part II.D-F, *supra*.  The Court's reasoning is equally applicable to Defendants BANA, MERS, and BONY because Plaintiff has not adequately pled essential elements of the negligent misrepresentation

and attempted wrongful foreclosure claims, and has failed to comply with the statutory requirements of Georgia's quiet title provision.

G.    Violation of the Real Estate Settlement Procedures Act (Count VIII)

Plaintiff's final claim against Defendants alleges that they violated RESPA by failing to answer all of the questions in his QWR.  (Compl., Dkt. [1-1] ¶¶ 72, 87.)  The provision pertaining to QWRs is as follows:

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower, and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  Section 2605(e) of RESPA then requires servicers to respond to a borrower's servicing-related QWR by making appropriate corrections, conducting an investigation, and "provid[ing] the borrower with a written explanation or clarification that includes . . . information requested by

24

the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." Id. § 2605(e)(2)(C).

As Defendants point out, the term "servicing" is defined in the statute as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." Id. § 2605(i)(3). Plaintiff's QWR, a copy of which is attached to his Complaint, seeks information far beyond what a QWR contemplates, including information about the validity, origination, and ownership of the loan. (See Pl.'s QWR, Dkt. [1-1] at 53-71.) Defendant BANA responded to Plaintiff's QWR in a letter by counsel that answered Plaintiff's inquiries related to the servicing of his loan and further attached copies of a number of documents, including the Security Deed and a payment history. (See BANA Letter, Dkt. [1-1] at 72-76.) For each category of questions and requests for documents to which Defendant BANA declined to respond, it explained that "these requests are overly broad, do not concern the application of payments or the disbursement of funds to the Borrower, and make no allegations whatsoever of any wrongdoing by Bank of America." (Id.)

25

Plaintiff did not point out any particular errors related to the servicing of his loan, and the only allegation of wrongdoing in his Complaint is that Defendants failed to answer all of his questions.  However, because he has not alleged that Defendants failed to respond to any servicing-related requests in his QWR, and because he has not alleged how any failures caused his purported damages, Plaintiff's RESPA claim is due to be dismissed.

  H. <u>Leave to Amend</u>

   While Plaintiff has requested leave to amend in the event the Court finds that his claims fail, the Court finds that amendment would be futile as to the remaining Defendants because, as discussed above in Part II.G, *supra*, Plaintiff has not identified the substance of any proposed amendments and thus cannot cure the deficiencies of his Complaint.  As such, Plaintiff is not entitled to any relief based on the above claims, and Defendants Bank of America, N.A., Mortgage Electronic Registration Systems, Inc., and Bank of New York Mellon's Motion to Dismiss [11] is due to be **GRANTED**.

**Conclusion**

   In accordance with the foregoing, both Defendant Rubin Lublin LLC's Motion to Dismiss [7] and Defendants Bank of America, N.A., Mortgage

26

Electronic Registration Systems, Inc., and Bank of New York Mellon's Motion

to Dismiss [11] are **GRANTED**.  The Clerk shall close the case.

      **SO ORDERED**, this  10th  day of January, 2014.



                                                      _RICHARD W. STORY_

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

27